**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

**BARBARA BULGART,**
individually and on behalf of all
others similarly situated,

Plaintiff,

v.

**PRIME TIME WINDOW CLEANING, INC.**

Defendant.
_______________________________________/

**CASE NO.** 1:24-cv-13306

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Barbara Bulgart ("Plaintiff") brings this class action against Prime Time Window Cleaning, Inc. ("Defendant") and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. However, the TCPA doesn't only restrict robocalls.

3. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone

records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5. To promote its goods and services, Defendant engaged in unsolicited pre-recorded telemarketing calls as well as making those calls to individuals on the National Do Not Call Registry. Defendant also engages in telemarketing without the required policies and procedures, and training of its personnel engaged in telemarketing.

6. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the

daily life of Plaintiff and the Class members. Plaintiff also seeks statutory damages on behalf of Plaintiff and members of the Class, and any other available legal or equitable remedies.

**JURISDICTION AND VENUE**

7. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the TCPA.

8. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant resides in this District.

**PARTIES**

9. Plaintiff is a natural person entitled to bring this action under the TCPA.

10. Defendant is a corporation whose principal office is located in this District.

11. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

**FACTUAL ALLEGATIONS**

12. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

13. Plaintiff's cellular telephone number is 847-345-XXXX.

14. Plaintiff listed her telephone number on the National Do-Not-Call Registry on December 29, 2004, and has not removed it from the Registry since that time.

15. Plaintiff uses this telephone number for personal, residential, and household purposes.

16. Plaintiff's telephone number is not associated with any business.

17. The Plaintiff does not have a landline in her house.

18. The Plaintiff does not have any other telephone number.

19. The Plaintiff's phone is paid for herself and not by a business.

20. The Plaintiff has a consumer cellular telephone plan through Verizon.

21. Over the last twelve (12) months, Plaintiff has received more than five telephone solicitations on her cellular telephone, 847-345-XXXX, from Prime Time.

22. Plaintiff does not recall ever having been a customer of Defendant and never consented to receive calls from Defendant.

23. Yet, these calls were placed for the purpose of advertising Defendant's services to Plaintiff.

24. On at least two occasions, Plaintiff has answered Defendant's calls informed a representative of Defendant that she is not interested in Defendant's services and asked Defendant to cease calling her.

25. Plaintiff also informed Defendant's representatives on these occasions that she no longer lives within Defendant's service area.

26. Despite this, Plaintiff has continued to receive persistent and harassing calls from Defendant.

27. For instance, on or about September 26, 2024, Plaintiff received a telemarketing voicemail on her cellular telephone, 847-345-XXXX, from Defendant.

28. This call came from the number 630-504-7763.

29. On this occasion, Plaintiff's phone only rang once before Defendant's voicemail appeared in Plaintiff's inbox, depriving her of the opportunity to answer Defendant's call and request that Defendant cease soliciting to her.

30. The contents of that voicemail are as follows:

> This is Prime Time Window Cleaning. We wanted to remind you that Fall is the perfect time to refresh your home with our window cleaning, gutter cleaning, and pressure washing services. Regular maintenance can make a big difference to both the appearance and longevity of your property. If you would like to schedule a service, give us a call at 1-800-480-1360 or visit us online at www.bookprimetime.com. We look forward to helping you keep your property looking its best.

31. Plaintiff received yet another voicemail from Defendant on or around October 11, 2024, on her cellular telephone, 847-345-XXXX.

32. That voicemail also came from the number 630-504-7763.

33. The contents of that voicemail were identical to the voicemail left on Plaintiff's cellular phone on or about September 26, 2024.

34. The voicemails left for Plaintiff on at least these two occasions, on or about September 26, 2024, and on or about October 11, 2024, were clearly pre-recorded because (a) the recordings are identical in tone, voice, and cadence; (b) the robot has a mono-tone voice; (c) the message was impersonal and did not identify Plaintiff or any specific recipient and (d) the voicemail abruptly cuts off at the end.

35. Furthermore, the Plaintiff could easily identify the message as recorded. *See Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODE-JSA, 2016 U.S. Dist. LEXIS 186171 at 10-11 (N.D. Ga. June 23, 2016) ("When one receives a call it is a clear-cut fact easily discernible to any lay person whether or not the recipient is speaking to a live human being or is instead being subjected to a prerecorded message.").

36. In addition to the do-not-call requests that Plaintiff made to Defendant's representatives, Plaintiff posted the following review on Google Maps on August 18, 2023, which Defendant responded to:

> Please don't do business with this company! They will hound you for years. I haven't lived in that area for 3 years and have requested to be removed from their contact list 6 times and I still get calls and messages! Customer Service is rude and not empowered to help.
>
> **Response from the owner**
>
> Greetings Barb,
>
> Thank you for bringing this matter to our attention. We sincerely apologize for any inconvenience or frustration you've experienced due to our contact attempts. We understand how important it is to respect our customers' wishes regarding communication preferences.
>
> We have thoroughly investigated this issue and it seems there might have been a technical error in our system, which caused the continued contact despite your requests. We have taken immediate action to rectify this and ensure that your contact information has been permanently removed from our database.

> Please accept our sincere apologies for any rudeness or lack of empowerment displayed by our customer service representatives. We strive to provide excellent customer service, and your feedback will be used to improve our training and processes.
>
> If there is anything else we can do to resolve this matter or improve your experience with our company, please don't hesitate to reach out to us directly at (800) 480-1360. We value your feedback and appreciate the opportunity to make it right.
>
> Thank you for bringing this to our attention and allowing us the chance to address your concerns.
>
> Best regards, Prime Time Window & Gutter Cleaning
>
> *See* https://maps.app.goo.gl/H8xBRR4XFBogXehm8 (Last Visited December 5, 2024).

37. In its response, Defendant admits to placing illegal calls to Plaintiff.

38. Despite Defendant's reassurances in its response to Plaintiff's complaint that Plaintiff would cease to receive calls, Plaintiff continued to receive constant, vexing calls from Defendant.

39. Indeed, Plaintiff received so many calls that she submitted a Better Business Bureau complaint on or about June 13, 2024, detailing Defendant's noncompliance with her do-not-call requests.

40. Similarly, other individuals have received unwanted telephone solicitations from Defendant:

Mary L

★☆☆☆☆ 11/21/2023

I have reported this company for incessantly emailing and calling. Now they use blocked numbers. This is the worst company I have ever dealt with. They email blasts comments. They call constantly and keep calling - 8 times a day.

*See* https://www.bbb.org/us/il/chicago/profile/window-cleaning/prime-time-window-gutter-cleaning-0654-31000092/customer-reviews (Last Visited December 5, 2024)

Stephen T

★☆☆☆☆ 07/03/2022

Prime Time has been told on at least 6 separate occasions that my family moved from the location that they had previously performed a service at and asked them to remove ** from their call list. Each time I ask them to do so, they insist that they will immediately take care of it. Yet each year they keep on calling. They are about as good on their word on this as they were on keeping their appointment time and cost quote, which was POOR.

*See* https://www.bbb.org/us/il/chicago/profile/window-cleaning/prime-time-window-gutter-cleaning-0654-31000092/customer-reviews (Last Visited December 5, 2024)

Prime Time Window Cleaning
Window cleaning service
North Center
PLACE DETAILS



enriquealberto37

★☆☆☆☆ 6 months ago

This company's job is mediocre at best. I have told these people to stop calling me several dozen times. I have blocked every phone number they call me from and yet there is always a new number I get a call from. I just got called by these jerks, I had to use profanity hoping these people stop calling me. I will never hire them again! The person they sent lied about cleaning the split roof. They are dishonest with a very poor workmanship. Do yourselves a favor and avoid Prime Time Window Cleaning like the plague!

*See* https://maps.app.goo.gl/SMmvKM9kfYkqsshF9 (Last Visited December 5, 2024)

41. Plaintiff and other individuals who received these telephone solicitation calls suffered an invasion of privacy and were harassed by the conduct of Defendant.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

42. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiff and all others similarly situated.

43. Plaintiff brings this case on behalf of the Classes defined as follows:

> IDNC Class: All persons within the United States who, within the four years prior to the filing of this lawsuit through the date of class certification, received two or more telemarketing calls within any 12-month period, from or on behalf of Defendant, regarding Defendant's goods or services, to said person's residential telephone number, *after* communicating to Defendant that they did not wish to receive such calls.
>
> DNC CLASS: All persons in the United States who, within the four years prior to the filing of this action through the date of class certification, (1) were sent more than one telemarketing call within any 12-month period; (2) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (3) regarding Defendant's property, goods, and/or services; (4) to said person's residential telephone number.
>
> Robocall Class: All persons within the United States: (1) to whose cellular telephone number (2) Defendant (or an agent acting on behalf of Defendant) placed a telemarketing call (3) within the four years prior to the filing of the Complaint and through trial (4) using a pre-recorded message.

44. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

45. Defendant and its employees or agents are excluded from the Classes.

### NUMEROSITY

46. Plaintiff does not know the exact number of members of the Class but is informed and believes that there are at least 50 individuals that fall within the class definitions given Defendant's use

of robotexts to solicit consumers and refusal to honor stop requests. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

47. The exact number and identities of the members of the Classes are unknown at this time and can only be ascertained through discovery. Identification of Class members is a matter capable of ministerial determination from Defendant's call records.

**<u>COMMON QUESTIONS OF LAW AND FACT</u>**

48. There are numerous questions of law and fact common to members of the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the members of the Classes are:

a. Whether Defendant sent calls to Plaintiff and Class members;

b. Whether Defendant continued to send solicitation calls after opt-out requests;

c. Whether Defendant used pre-recorded messages to make such calls;

d. Whether Defendant failed to honor Plaintiff's and Class members' opt-out requests;

e. Whether Defendant implemented the requisite training of personnel under section 64.1200;

f. Whether Defendant maintains an internal do-not-call list and instructs its employees on how to use the list;

g. Whether Defendant called individuals who had registered their telephone numbers on the National Do Not Call Registry;

h. Whether Defendant maintains the required policies and procedures under section 64.1200; and

i. Whether Defendant is liable for damages, and the amount of such damages.

49. The common questions in this case are capable of having common answers, and Plaintiff and Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**<u>TYPICALITY</u>**

50. Plaintiff's claims are typical of the claims of Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

51. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

52. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

53. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the IDNC Class)**

54. Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1 through 48 as if fully set forth herein.

55. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has

> instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

56. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

57. Plaintiff and IDNC Class Members are residential telephone subscribers who received more than one telemarketing call made for purposes of telemarketing or solicitation purposes from Defendant, who has failed to implement the requisite procedures and personnel training as demonstrated by its repeated failure to honor opt-out requests.

58. Plaintiff and IDNC Class members made requests to Defendant not to receive telemarketing calls from Defendant.

59. Plaintiff and IDNC Class Members revoked any consent they may have previously provided Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's calls.

60. Plaintiff and IDNC Class Members revoked any consent they may have provided Defendant by responding with "stop" or similar opt-out instructions.

61. Defendant continued to call Plaintiff and IDNC Class Members to harass them into making purchases from Defendant.

62. Defendant failed to honor Plaintiff's and IDNC Class members' opt-out requests.

63. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

64. Plaintiff and IDNC Class members are informed and believe that Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls.

65. Plaintiff and IDNC Class members are informed and believe that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list.

66. Plaintiff and IDNC Class members are informed and believe that Defendant does not train its personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list.

67. The details and specific facts regarding Defendant's failure to maintain the required policies and procedures, as well as personnel training, are solely within Defendant's knowledge and possession.

68. Defendant has violated 47 C.F.R. § 64.1200(d) by failing to honor opt-out requests, failing to maintain the required policies and procedures, and failing to train its personnel engaged in telemarketing.

69. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and IDNC Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

70. As a result of Defendant's knowing or willful conduct, Plaintiff and IDNC Class members are entitled to an award of $1,500.00 in statutory damages per violation.

**COUNT II**
**<u>Violations of 47 U.S.C. § 227(b)</u>**
**(On Behalf of Plaintiff and the Robocall Class)**

71. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 49 as if fully set forth herein.

72. The foregoing acts and omissions of Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class delivering pre-recorded messages.

73. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their residential or cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

74. If the Defendant's conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

**COUNT III**
**<u>Violations of 47 U.S.C. § 227(c) and 64.1200(c)</u>**
**(On Behalf of Plaintiff and the DNC Class)**

75. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 49 as if fully set forth herein.

76. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides in pertinent part that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone

subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

77. Per 47 C.F.R. § 64.1200(e), § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

78. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

79. Defendant violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to telephone subscribers such as Plaintiff and DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

80. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and DNC Class members received more than one solicitation call in a 12-month period from Defendant in violation of 47 C.F.R. § 64.1200.

81. As a result of Defendant's conduct as alleged herein, Plaintiff and DNC Class members suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the DNC Class

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

a) An award of statutory damages for Plaintiff and each member of the Classes as applicable under the TCPA;

b) An order declaring that Defendant's actions, as set out above, violate the TCPA;

c) An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(d) by (1) maintaining the required written policies; (2) providing training to their personnel engaged in telemarketing; and (3) maintaining a do-not-call list

d) Such further and other relief as the Court deems necessary.

## **JURY DEMAND**

Plaintiff hereby demand a trial by jury.

Dated: May 1, 2025

Respectfully submitted,

*/s/ Anthony I. Paronich*

PARONICH LAW, P.C.
Anthony I. Paronich
350 Lincoln St., Suite 2400
Hingham, MA 02043
617-485-0018
anthony@paronichlaw.com

*Attorneys for Plaintiff and proposed class*