UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

**BARBARA BULGART,**
individually and on behalf of all
others similarly situated,

**CASE NO.** 1:24-cv-13306

**CLASS ACTION**

Plaintiff,

**JURY TRIAL DEMANDED**

v.

**PRIME TIME WINDOW CLEANING, INC.**

Defendant.
_____/

## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020). The TCPA also restricts calls made to numbers on the National Do Not Call Registry.

"The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone

1

solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

This case is no different. The Plaintiff alleges a straightforward claim based on her receipt of several telemarketing calls, two of which were unwanted pre-recorded robocalls. She alleges. Like nearly every other Court to consider the issue, the Plaintiff has plainly alleged that (a) there is a private right of action for a defendant failing to honor a consumer's request to stop getting telemarketing calls (b) her cellular telephone is her residential line (c) the Defendant's calling conduct was intentional and continued after repeated requests to stop *and* the Defendant claiming that they would stop (they did not), so she is eligible for willful violations (d) the calls were made with a pre-recorded voice and (e) the Defendant's safe harbor defense to some of the Plaintiff's claim is an affirmative defense that should be decided at summary judgment.

This matter should continue to discovery and the Defendant's motion to dismiss should be denied.

## ARGUMENT

### A. 47 C.F.R. § 64.1200(d) Contains a Private Right of Action

The Defendant's attempt to dismiss the Plaintiff's 47 C.F.R. § 64.1200(d) claim should also be rejected.

Section 227(c)(5) provides that an individual "who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may pursue a private right of action. 47 U.S.C. § 227(c)(5). The regulations under 47 C.F.R. § 64.1200(d) require businesses that engage in telemarketing to maintain a do-not-call list for people who have requested not to be called for telemarketing purposes. *See* 47 C.F.R. § 64.1200(d); *Bilek v. Nat'l Cong. of Emps., Inc.*, 470 F. Supp. 3d 857, 862 (N.D. Ill. 2020) (citing 47 C.F.R. § 64.1200(d)).

While the Seventh Circuit has not decided the issue, "the Sixth and Eleventh Circuits have recognized a private right of action for violations of internal do-not-call list regulations," as have many district courts in this circuit. *Sorsby v. TrueGreen Ltd. P'ship*, No. 20-CV-2601, 2020 U.S. Dist. LEXIS 241659, 2020 WL 7641288, at *5 (N.D. Ill. Dec. 23, 2020); *see also Bilek*, 470 F. Supp. 3d at 862-63 [*912] ("Taken as a whole, section 64.1200(d) implements section 227(c)'s command to protect the privacy rights of telephone subscribers to avoid receiving telephone solicitations to which they object."); *Gill v. Align Tech. Inc.*, No. 21-CV-631-JPS-JPS, 2022 U.S. Dist. LEXIS 87464, 2022 WL 1540016, at *2 (E.D. Wis. May 16, 2022) ("[B]ecause § 64.1200(d) reflects the concerns embraced by section 227(c)—*i.e.*, to protect consumers from phone solicitations to which they have already objected—it is reasonable to conclude that § 64.1200(d) was promulgated pursuant to § 227(c) and permits a private right of action for violations."); *Moore v. Pro Custom Solar LLC*, No. 21 C 4395, 2022 U.S. Dist. LEXIS 67347,

2022 WL 1092186, at *5 (N.D. Ill. Apr. 12, 2022). "This Court sees no reason to deviate from these well-reasoned decisions and, thus, finds that consumers have a private right of action for violations of § 64.1200(d)." *Showers v. Pelican Inv. Holdings Grp., LLC*, 751 F. Supp. 3d 900, 911-912 (N.D. Ill. 2024). This Court should hold the same.

### B. The plain language of the TCPA extends Do-Not-Call Protections to all consumer phones, including cell phones.

Cellular telephone numbers are entitled to the protections of the TCPA's National Do Not Call Registry provision. Defendant's argument that a cell phone cannot be a "residential" telephone number, and therefore that no cellular telephone is entitled to the TCPA's Registry protections, rests on a statutory interpretation that is "a bit strained as an initial matter." *Riley v. California*, 573 U.S. 373, 397 (2014). As with any question of statutory interpretation, the Court's inquiry "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016).

In enacting the Do Not Call provisions of the TCPA, Congress chose to extend protection to "residential telephone subscribers." *See* 47 C.F.R. § 64.1200(c)(2) (limiting DNC Registry to "residential" subscribed numbers). Reading the term "residential" to exclude other services, such as cellular telephone services, used for personal, household purposes is inconsistent with multiple canons of construction. Without a controlling statutory definition, as here, the term "residential" takes on its "ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). And, under the fixed-meaning canon, "[w]ords must be given the meaning they had when the text was adopted." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 78 (2012).

With respect to the TCPA, there are potentially two relevant time frames to consider: 1934, when the Telecommunications Act of which the TCPA is a part was enacted, and 2003,

when Congress passed the Do-Not-Call Implementation Act. Regardless of which the Court chooses, the meaning of the term "residential," as an adjective modifying "telephone subscribers," is the same. "Residential" means "used as a residence *or by residents*; adapted to (1936)/restricted to (2003) . . . residences; of or connected with (1936)/relating to (2003) . . . residence or residences." *Compare* Webster's New Collegiate Dictionary, Eleventh Ed. (2003) *with* Webster's Collegiate Dictionary (1936) (emphasis added) (cleaned up).

Especially in Webster's 2003 sense of "residential" meaning "restricted to" residences, the term "residential" is contrasted with the adjective "nonresidential," which is "not used as" or "not restricted to" residences or by residents. Webster's New Collegiate Dictionary, Eleventh Ed. (2003). In using "residential" language, Congress realized that, in the future, traditional residential forms of telecommunication like copper landlines may come to be supplanted by other technologies, like ISDN and T1 lines, Fiber Optics, VoIP, and cellular technologies. In using the term "residential," Congress meant what it said. It meant to contrast residential service *uses* from nonresidential *uses* and restrict DNC Registry protections to the former, regardless of the type of technology that the consumer chooses to use or a technology that can change. Indeed, as the Middle District of Pennsylvania held last year:

> The best reading of the word "residential" is not that it modifies the "telephone," but rather that "residential" and "telephone" both modify the "subscriber." So instead of describing a "subscriber" who owns a "residential telephone," Section 227(c)(1) describes a "telephone subscriber" who has subscribed for "residential," i.e., personal, purposes. "Residential" is therefore used in the broader sense of "relating to a resident" to distinguish such a subscriber from a business or commercial telephone subscriber, who cannot be added to the Do Not Call registry.

*Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449, at *5 (M.D. Pa. Jan. 17, 2024).

As such, "according to the TCPA's plain language and dictionary definitions of 'residence' and 'subscriber,' 'a residential subscriber is one who maintains a phone for residential

5

purposes…i.e., for personal activities associated with his or her private, domestic life.'" *Lirones v. Leaf Home Water Sols., LLC,* No. 5:23-CV-02087, 2024 WL 4198134, at *6 (N.D. Ohio Sept. 16, 2024) (*citing Cacho v. McCarthy & Kelly LLP*, No. 23-CV-11157 (LJL), 739 F. Supp. 3d 195, 206 (S.D.N.Y 2024)). In other words, the analysis turns on how the subscriber uses the line, not what device or technology they use it on. Indeed, as another Court held last year:

The TCPA's National Do Not Call Registry provision "provides protections to a certain type of phone user, regardless of the technology." *Lirones*, 2024 U.S. Dist. LEXIS 165900, at *14-19; *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449, at *5 (M.D. Pa. Jan. 17, 2024) ("The best reading of the word 'residential' is not that it modifies the 'telephone,' but rather that 'residential' and 'telephone' both modify the 'subscriber.' So instead of describing a 'subscriber' who owns a 'residential telephone,' Section 227(c)(1) describes a 'telephone subscriber' who has subscribed for 'residential,' i.e., personal, purposes. 'Residential' is therefore used in the broader sense of 'relating to a resident' to distinguish such a subscriber from a business or commercial telephone subscriber, who cannot be added to the Do Not Call registry.").

"Cellular telephones . . . are a kind of telephonic communications technology. A 'residential subscriber,' by contrast, does not refer to the specific phone technology, but to the type or identity of the subscriber to the technology. Thus, a 'residential subscriber' and a cellular telephone are not members of the same genus." *Lirones*, 2024 U.S. Dist. LEXIS 165900, at *14-19.

"The inclusion of the term 'cellular telephone' in § 227(b) and its exclusion from § 227(c) does not indicate that Congress intentionally omitted cellular telephones from § 227(c)'s protections; 'Had Congress wished to limit section 227(c) to specified telephone technologies rather than specified telephone subscribers, it would have indicated somewhere in that section that the [Do Not Call] registry is limited to a *residential telephone **line***, as Congress used that term in the preceding subsection.'" *Id.*

"If the term *residential* referred to the telephone technology, then 'Congress's reference to a residential telephone *line* [in § 227(b)] would be surplusage, as a residential telephone would necessarily be a landline instead of a cellphone.'" *Id.*

"Furthermore, according to the TCPA's plain language and dictionary definitions of 'residence' and 'subscriber,' 'a residential subscriber is one who maintains a phone for residential purposes . . . i.e., for personal activities associated with his or her private, domestic life.'" *Lirones*, 2024 U.S. Dist. LEXIS 165900, at *14-19.

Accordingly, "based on the text of the statute and tools of statutory interpretation, the Court [should] reach the same conclusion in the absence of any FCC interpretation of the term 'residential subscriber'—that Plaintiff's allegations supporting the conclusion that he is a residential subscriber of his cellular telephone number *"satisfy both the plain text of the TCPA and the FCC's regulations"*. *Id.*

Defendant only relies on *Gaker v. Q3M Ins. Sols.*, No. 22-cv-00296, 2023 U.S. Dist. LEXIS 44919, at *8 (W.D.N.C. Feb. 8, 2023) and *Cunningham v. Britereal Mgmt.*, No. 20-cv-144 (E.D. Tex. 2020) are unpersuasive outliers. The first is an unresolved magistrate recommendation; the second involved a *pro se* plaintiff who failed to plead that his cellphone functioned as a residential line. *Gaker* was "an unresolved magistrate recommendation." *See Black v. Ideal Concepts,* No. 1:24-cv-01323 (W.D. Tex. April 21, 2025) Order Denying Defendant's Motion to Dismiss, ECF No. 22 (criticizing *Gaker*). Additionally, Court later entered judgment for the plaintiff on liability.[1] Thus, *Gaker*, if anything, betrays Defendant's own position. Even the Magistrate Judge's opinion in *Gaker* acknowledges that other district courts in the Fourth Circuit, where that decision was, have held that wireless numbers are entitled to DNCR protections. 2023 U.S. Dist. LEXIS 44919, at *5 (citing *Boger*

---

[1] The plaintiff in *Gaker* appealed the Magistrate Judge's Opinion to the District Judge. ECF 29, No. 3:22-CV-00296-RJC-DSC. However, the parties then jointly requested a stay of that case pending settlement discussions. *Id.* at 31.

7

*v. Citrix Sys. Inc.,* No. 8:19-cv-01234-PX, 2020 U.S. Dist. LEXIS 71072, 2020 WL 1939702, at *4 (D. Md. Mar. 3, 2020) ("[T]he Complaint does not foreclose that [the plaintiff's] cell phone functioned as a residential telephone number for the purposes of the statute.")). *Gaker* is oft-criticized, with the Jackson court characterizing it as "ill-founded." *Jackson*, 2024 U.S. Dist. LEXIS 8811, at *12, fn. 60. In *Cunningham* a serial *pro se* plaintiff failed to plead that his cellphone functioned as a residential line. *See Myrick v. Adapthealth, LLC,* No. 6:22-CV-00484-JDK, 2023 WL 5162396, at *3 (E.D. Tex. June 26, 2023) ("Plaintiffs allegations regarding his cellular phone qualifying him as a residential telephone subscriber distinguish this case from the line of Cunningham cases cited by Defendants.").

Not surprisingly, "the majority of courts throughout the country . . . have held that cell phones . . . are entitled to the TCPA's protection as residential telephones." *Tessu v. AdaptHealth, LL*C, No. SAG-23-0364, 2023 WL 5337121, at *5 (D. Md. Aug. 17, 2023). This is consistent with the plain, textualist reading of the TCPA articulated above.[2]

---

[2] *See also Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023) ("As Hall alleges that she was the owner and subscriber of a cell phone number on the Do-Not-Call Registry that received unsolicited text messages in violation of the TCPA, she has stated an injury in fact sufficient to satisfy Article III."); *Barton v. JMS Assoc. Mktg., LLC*, No. 21-35836, 2023 WL 2009925, at *1-2 (9th Cir. Feb. 15, 2023) (explaining the "district court . . . erred in declining to award damages" under 47 C.F.R. § 64.1200(c)(2) for calls to the plaintiff's "cell phone"); *Kemen v. Cincinnati Bell Tel. Co. LLC*, No. 1:22-CV-152, 2023 WL 361136, at *5 (S.D. Ohio Jan. 23, 2023) ("To be sure, cell phones *can* be 'residential' under the TCPA."); *Atkinson v. Choice Home Warranty*, No. CV 22-04464, 2023 WL 166168, at *4 (D.N.J. Jan. 11, 2023) ("The consensus in [the Third] Circuit is that Do Not Call claims may apply to cell phones."); *Noviello v. Holloway Funding Grp.*, No. 3:22-CV-52-BN, 2023 WL 128395, at *5 (N.D. Tex. Jan. 9, 2023) ("[C]ourts have held that cellular telephones can qualify as residential telephones, so long as a plaintiff pleads that the cellular telephone is used for residential purposes."); *Gill v. Align Tech. Inc.*, No. 21-CV-631-JPS-JPS, 2022 WL 1540016, at *3 (E.D. Wis. May 16, 2022) ("The TCPA and its enabling regulations also apply to wireless telephone numbers such as Plaintiff's, which were personal use, not associated with any business, and registered on the National Do Not Call Registry."); *Miholich v. Senior Life Ins. Co.*, No. 21-CV-1123-WQH-AGS, 2022 WL 1505865, at *3 (S.D. Cal. May 12, 2022) (rejecting the defendant's position that the plaintiff's cellular telephone "was not a residential telephone subscriber covered by the TCPA"); *Rose v. New TSI*

**C. The Plaintiff has adequately pled willful or knowing violations.**

In interpreting the willful or knowing standard, courts require only that a party's actions were intentional, not that it was aware that it was violating the statute. *See, e.g.*, *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014) ("willful or knowing violation of TCPA requires only that defendant know of the facts constituting the offense"); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310 (N.D. Ill. Mar. 19, 2013) ("[T]he Court adopts the more common interpretation that 'willfully' or 'knowingly' simply requires that the act be intentional or volitional, as opposed to inadvertent, and not that defendant must have known that the conduct would violate the statute.").

The allegations at issue plainly demonstrate that the Defendant was taking intentional actions. *See* ECF No. 10 at ¶¶ 21-40. This includes, that Plaintiff received more than 5 telephone calls from

---

*Holdings, Inc.*, No. 21-CV-5519 (JPO), 2022 WL 912967, at *2 (S.D.N.Y. Mar. 28, 2022) (rejecting the defendant's argument that the plaintiff "has no private right of action under the TCPA because he alleges only that he received prerecorded messages on his cellphone, thus failing to establish that he is a residential telephone subscriber"); *Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-CV-1598-D, 2022 WL 562761, at *2 (N.D. Tex. Feb. 24, 2022) ("courts have held that cellular telephones can qualify as residential telephones, so long as a plaintiff pleads that the cellular telephone is used for residential purposes"); *Mantha v. QuoteWizard.com, LLC*, No. CV 19-12235-LTS, 2022 WL 325722, at *3 (D. Mass. Feb. 3, 2022) (agreeing that the "TCPA's DNC protections apply to cellular phone numbers"); *Dudley v. Vision Solar, LLC*, No. CV 21-659, 2021 WL 3077557, at *5 (E.D. Pa. July 21, 2021) ("The consensus in this Circuit is that Do Not Call claims may apply to cell phones."); *McDermet v. DirecTV, LLC*, No. CV 19-11322-FDS, 2021 WL 217336, at *12 (D. Mass. Jan. 21, 2021) ("[I]t is unlawful to 'initiate any telephone solicitation to' a 'residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry.' 47 C.F.R. § 64.1200(c)(2). That includes cell-phone owners."); *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 656 (W.D. Tenn. 2020) ("A cellular telephone can satisfy the "residential telephone subscriber" element of § 64.1200(c) & (d)."); *Mestas v. CHW Grp. Inc.*, 508 F. Supp. 3d 1011, 1028 (D.N.M. 2020) ("[o]ther courts that have considered the application of § 64.1200(e) have concluded that a cell phone user can qualify as a residential telephone subscriber under § 64.1200(c) and (d)"); *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 131 (N.D. Tex. 2020) (rejecting the defendant's contention "that cell phones, as a matter of law, cannot be residential subscribers," based on "common sense and the greater weight of authorities"); *Beal v. Outfield Brew House, LLC*, 29 F.4th 391 (8th Cir. 2022).

9

Prime Time despite never being a customer of them. Indeed, the Plaintiff's allegations go further on willful conduct because she also alleges that on at least two occasions, Plaintiff has answered Defendant's calls informed a representative of Defendant that she is not interested in Defendant's services and asked Defendant to cease calling her and that her complaint on a Google Review assured her should would no longer receive calls. *Id.* The Amended Complaint goes on to allege that despite Defendant's reassurances in its response to Plaintiff's complaint that Plaintiff would cease to receive calls, Plaintiff continued to receive constant, vexing calls from Defendant. *Id.* Indeed, Plaintiff received so many calls that she submitted a Better Business Bureau complaint on or about June 13, 2024, detailing Defendant's noncompliance with her do-not-call requests. *Id.* The Plaintiff also alleges that the Defendant has engaged in this calling despite other individuals have received unwanted telephone solicitations from Defendant. *Id.*

In fact, motions to dismiss on these grounds have been denied in cases involving much less specific allegations from plaintiffs. *See, e.g., Pacleb v. Cops Monitoring*, No. 2:14-CV-01366-CAS(JCx), 2014 U.S. Dist. LEXIS 91976, at *12-13 (C.D. Cal. July 7, 2014) ("Similarly, defendant argues that the FAC does not adequately allege that defendant acted knowingly and/or willfully in violating the TCPA. This argument fails because the FAC alleges that defendant's conduct constituted 'multiple knowing and/or willful violations of the TCPA,' *see* FAC ¶ 58, and the Court takes this allegation as true for the purposes of the present motion."). And the same outcome is warranted here as these allegations go far beyond intentional conduct, which is all that is required.

**D. The Plaintiff states a claim for receiving a call with a pre-recorded voice.**

Under the TCPA, it is unlawful "for any person ... to make any call [other than for emergencies or with the recipient's prior express consent] using … an artificial or prerecorded voice" to a cell phone. 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA does not define the term artificial or prerecorded voice. *Mina*

*v. Red Robin Int'l, Inc.*, No. 20-CV-00612-RM-NYW, 2022 U.S. Dist. LEXIS 104423, 2022 WL 2105897, at *7 (D. Colo. June 10, 2022).

"A TCPA claim survives a motion to dismiss if the plaintiff describe[s] anything about the circumstances of a call or message contributing to [her] belief it was pre-recorded." *Slominski v. Globe Life Inc.,* 2024 U.S. Dist. LEXIS 24378, *16 (E.D. NC.). Indeed, "Courts have denied motions to dismiss in cases brought under the TCPA in which plaintiffs have alleged that they received prerecorded calls and that the contents of the call were identical." *Rose v. New Tsi Holdings, Inc.*, No. 21-CV-5519 (JPO), 2022 U.S. Dist. LEXIS 56525, 2022 WL 912967, at *2 (S.D.N.Y. Mar. 28, 2022) (citing *Dendy v. Chartrand*, No. 18-CV-1118-WPJ, 2019 U.S. Dist. LEXIS 26778, 2019 WL 719762, at *3 (D.N.M. Feb. 20, 2019) (denying motion to dismiss "because the calls contained prerecorded messages" and "contained the same message")).

A plaintiff sufficiently pleads a pre-recorded message claim under the TCPA when the allegations supply details beyond bare legal conclusions or the recitation of statutory language, such as the frequency of the calls and their content. *Evans v. Nat'l Auto Div., L.L.C.*, No. 15-8714, 2016 U.S. Dist. LEXIS 29348, at *4-5 (D.N.J. Mar. 7, 2016). Courts have recognized the following averments to be indicative of a prerecorded call: "1) a delay before hearing the message, 2) calls ending with a beep, 3) instructions to call a 1-800 number, 4) an unusual phone number or short code instead, 5) a robotic voice on the other end, or 6) the absence of anything specific to the person being called." *Smith v. Am.-Amicable Life Ins. Co. of Texas*, No. CV 22-333, 2022 U.S. Dist. LEXIS 62115, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022); *see also Smith v. Pro Custom Solar LLC*, No. CV1920673KMESK, 2021 U.S. Dist. LEXIS 8616, 2021 WL 141336, at *2-3 (D.N.J. Jan. 15, 2021).

Here, the Plaintiff included the content of the pre-recorded message, including the specific allegation that call began with a recording stating

11

> This is Prime Time Window Cleaning. We wanted to remind you that Fall is the perfect time to refresh your home with our window cleaning, gutter cleaning, and pressure washing services. Regular maintenance can make a big difference to both the appearance and longevity of your property. If you would like to schedule a service, give us a call at 1-800-480-1360 or visit us online at www.bookprimetime.com. We look forward to helping you keep your property looking its best.

*See* First Amended Complaint at ¶30. The Plaintiff goes on to allege that she received multiple voicemails and that the contents of that voicemail were identical to the voicemail left on Plaintiff's cellular phone on or about September 26, 2024. *Id.* at ¶ 32-33. The Plaintiff's further alleges that the calls were clearly pre-recorded because (a) the recordings are identical in tone, voice, and cadence; (b) the robot has a mono-tone voice; (c) the message was impersonal and did not identify Plaintiff or any specific recipient and (d) the voicemail abruptly cuts off at the end. *Id.* at ¶ 35. Finally, the Plaintiff could easily identify the message as recorded. *Id.* at ¶ 36. *See Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODE-JSA, 2016 U.S. Dist. LEXIS 186171 at 10-11 (N.D. Ga. June 23, 2016) ("When one receives a call it is a clear-cut fact easily discernible to any lay person whether or not the recipient is speaking to a live human being or is instead being subjected to a prerecorded message.").

These facts are more than sufficient to put Defendant on notice of the claims against it. *See e.g. Neptune v. Whetstone Partners, LLC*, 34 F.Supp.3d 1247, 1250 (S.D. Fla. 2014) (finding sufficient allegations that calls were prerecorded where *inter alia* Defendant called Plaintiff on numerous occasions several times per day, with generic content messages such as a prerecorded voice reminding Plaintiff that his payment was due); *Sojka v. DirectBuy, Inc.,* 35 F. Supp. 3d 996, 1003 (N.D. Ill. 2014) ("The complaint describes in detail five voicemails left for the Sojkas by DirectBuy from August 2012 to November 2012."). Indeed, the Court in *Abramson v. AP Gas & Elec. (PA), LLC*, Civil Action No. 22-1299, 2023 U.S. Dist. LEXIS 18996, at *8 (W.D. Pa. Feb. 6, 2023) also found that "Abramson alleges that he received a call that started with the following pre-recorded message….This allegation sufficiently alleges that the caller used a prerecorded message.").

### E. Allegation of an ATDS is not required for a claim under 47 U.S.C. 227(c) or 47 C.F.R. § 64.1200(d).

The Defendant's next argument can be dispatched with quickly, as there's no requirement for an ATDS to be used when calls are alleged to have violated 47 U.S.C. 227(c) or 47 C.F.R. § 64.1200(d). As Judge Tharp explained while denying a similar motion to dismiss in a TCPA case:

> Hupp's first argument—that Moore failed to allege Hupp's use of ATDS—is misplaced. It seeks to undermine Moore's ability to state a plausible subsection (b) *robocalling* claim under [*4] the TCPA, but not his ability to state a *national-do-not-call-registry violation* claim under TCPA subsection (c) and the FCC's corresponding regulations, 47 C.F.R. § 64.1200(c)(2). In short, Hupp is attacking the plausibility of the wrong type of TCPA claim.
>
> Subsection (b) of the TCPA relates to "robocalling" practices. It "prohibits the use of an 'automatic telephone dialing system' to call or text any cellular phone without the prior consent of the recipient." *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 460 (7th Cir. 2020) (quoting 47 U.S.C. § 227(b)(1)). That subsection also includes an express private right of action and statutory damages provision. 47 U.S.C. § 227(b)(3).
>
> Apart from subsection (b)'s robocalling restrictions, however, the TCPA, in subsection (c), directs the FCC to promulgate regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Subsection (c) also provides for "a private right of action for a violation of the FCC's implementing regulations," distinct from subsection (b)'s private right of action. *Mims v. Arrow Fin. Services, LLC*, 565 U.S. 368, 375, 132 S. Ct. 740, 181 L. Ed. 2d 881 (2012); 47 U.S.C. § 227(c)(5).
>
> In keeping with Congress's directives in 47 U.S.C. § 227(c), the FCC issued regulations that, among other things, created the national do-not-call registry, required telemarketers to maintain their own internal do-not-call lists that are based on the national registry, and prohibited telemarketers from soliciting [*5] residential telephone subscribers who have registered their numbers on the national registry. 47 C.F.R. § 64.1200(c)(2). The regulations provide telemarketers with safe harbor from liability if they can demonstrate that (i) their "violation [wa]s the result of error and that as part of its routine business practice, it" met certain standards for complying with the national do-not-call rules, (ii) it obtained the subscriber's consent prior to calling, or (iii) the telemarketer had a personal relationship with the recipient of the call. 47 C.F.R. § 64.1200(c)(2)(i)-(iii). Courts in this District have recognized that violations of the FCC's rules in section 64.1200(c) can give rise to a private cause of action under 47 U.S.C. § 227(c)(5). *See, e.g., Moore v. Healthcare Sols. Inc.*, No. 21-CV-4919, 2022 U.S.

Dist. LEXIS 220437, 2022 WL 17487823 at *2-3 (N.D. Ill. Dec. 7, 2022). None have concluded that cases brought pursuant to the TCPA's subsection 227(c)(5) require a showing that the telemarketer used ADTS.

*Moore v. Nicole Hupp & Assocs., LLC*, 2023 U.S. Dist. LEXIS 195293, *3-5 (N.D. Ill.)[3]. The Plaintiff agrees that she does not plead the use of an ATDS, but she simply doesn't have to for violations of 47 U.S.C. 227(c) or 47 C.F.R. § 64.1200(d) and for her claim under 47 U.S.C. 227(b), she adequately alleges the use of a pre-recorded voice, as discussed above.

### F. The Defendant may pursue a "Safe Harbor" defense to some of the Plaintiff's claims, but the failure to plead a lack of "Safe Harbor" is not an element of the claim.

TCPA provision 47 U.S.C. § 227(c)(5) provides a private right of action for a person who has received more than one telephone call within any 12-month period by or on behalf of an entity in violation of the regulations prescribed under the subsection. The provision also states that "[i]t shall be an *affirmative defense* in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). (emphasis added). TCPA regulation 47 C.F.R. 64.1200(c)(2) prohibits any person or entity from initiating telephone solicitation to a "residential telephone subscriber who has registered [her] telephone number on the national do-not-call registry. . . ." It also provides, however, that any person or entity making the telephone solicitations will not be liable for violating the requirement set forth in § 64.1200(c)(2) if "[i]t can demonstrate that the violation is the result of error" and that "as part of its routine business practice," it meets certain standards. 47 C.F.R. § 64.1200(c)(2)(i).

---

[3] Interestingly, this case is cited by the Defendant for a different proposition in its motion.

Discovery is required on this issue as a party cannot 'claim 'error' simply by showing that it 'meets all other safe harbor criteria . . . .'" *Simmons v. Charter Communications, Inc.,* 222 F.Supp.3d 121, 135 (D. Conn. 2016); *see also*, *Mattson v. New Penn Financial, LLC*, 2020 U.S. Dist. LEXIS 197955, 2020 WL 6270907, at *2 (D. Or. Oct. 25, 2020) ("Having adequate procedures in place, in the absence of any error, is insufficient to avoid liability under the safe harbor provision.") (citations omitted). A defendant can show a telephone solicitation was made in error by showing that the call was made unintentionally, and must still meet all of the other criteria. *See Tyner v. Hi.Q, Inc.,* 2022 U.S. Dist. LEXIS 220099, *19-20 (W.D. Ok. 2022).

## CONCLUSION

For the reasons stated herein, the Defendant's motion to dismiss should be denied.

Dated: May 15, 2025

Respectfully submitted,

*/s/ Anthony I. Paronich*
PARONICH LAW, P.C.
Anthony I. Paronich
350 Lincoln St., Suite 2400
Hingham, MA 02043
617-485-0018
anthony@paronichlaw.com

*Attorneys for Plaintiff and proposed class*