IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BARBARA BULGART** | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:24-cv-13306 |
| v. | ) |
| | ) |
| **PRIME TIME WINDOW CLEANING, INC.,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL
RESPONSES TO DISCOVERY**

NOW COMES Defendant, Prime Time Window Cleaning, Inc. ("Defendant" or "Prime Time") by and through its attorneys Adler Law Group, and respectfully submits this response to Plaintiff, Barabara Bulgart's ("Plaintiff") Motion to Compel Responses to Discovery. The Motion seeks to compel the production of calling data and related discovery purportedly necessary for class certification and trial. Defendant requests that Plaintiff's Motion be DENIED. In support thereof, Defendant states as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed her original Class Action Complaint on December 30, 2024, (Dkt. No. 1) and her First Amended Class Action Complaint ("FAC") on May 1, 2025, (Dkt. No. 36), alleging violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, and the implementing FCC regulations at 47 C.F.R. § 64.1200. The FAC asserts three separate counts based on alleged TCPA violations and seeks to represent classes of alleged calling victims. On July 30, 2025 Defendant filed its Answer and Affirmative Defenses, denying all the essential elements of Plaintiff's claims and asserting prior express consent and application of the Do Not Call (DNC) Safe Harbor. Defendant has diligently responded to Plaintiff's requests, and provided three sets of Responses and Objections

1

to Plaintiff's discovery requests, identifying responsive documents within Bates ranges PT0003001-PT000362.

Defendant has not taken a blanket position refusing discovery. Rather, Defendant has:

1. Identified and agreed to produce all call detail records and prerecorded messages specifically relating to Plaintiff;

2. Produced policies, procedures, and training materials demonstrating Prime Time's compliance with TCPA requirements;

3. Identified all internal do-not-call list procedures and Plaintiff-specific documentation;

4. Produced contractual arrangements with third-party vendors;

5. Produced evidence of services requested by and provided to Plaintiff by Defendant at Plaintiff's address.

6. Made clear that it will not undertake a class-wide search extending beyond Plaintiff and will not produce contact information for undefined "putative class member" absent clear findings justifying such production.

## LEGAL STANDARD

Rule 37(a)(1) authorizes a party to move for an order compelling disclosure or discovery after conferring in good faith with the person or party failing to make disclosure or discovery in an effort to obtain it without court action. Information must be relevant to any part's claim or defense. Fed. R. Civ. P. 26(b)(1); *Motorola Solutions, Inc. v. Hytera Communications Corp.*, 365 F.Supp.3d 916, 924 (N.D. Ill. 2019). The information sought must be proportional to the needs of the case, considering: (1) the importance of the issues at stake; (2) the amount in controversy; the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs the likely benefit. Fed. R. Civ. P. 26(b)(1); *Glebka v. Allstate Corp.*, No. 19-cv-06662, 2021 WL 1062779 (N.D. Ill. Mar. 4, 2021). Discovery must be sought at an appropriate time. *Chapman v. First Index, Inc.*, 796 F.3s 783, 785 (7th Cir. 2015) (emphasizing that Rule 23(c)(1)(A) requires plaintiff to "put their class definitions on the table at an early practicable time").

2

**ARGUMENT**

I. **Class-Wide Discovery for Calling Date Is Premature and Inappropriate Absent Clear Findings Under Rule 23.**

Rule 23(c)(1)(A) directs courts to decide whether to certify a class "at an early practicable time," and the Seventh Circuit has emphasized that representative plaintiffs must "put their class definitions on the table" early in the litigation rather than pursue open-ended discovery in search of a certifiable class. In *Chapman v. First Index, Inc.,* 796 F.3d 783 (7th Cir. 2015), a TCPA class action similar to the present case, the Seventh Circuit held that "[i]nsisting that representative plaintiff's put their class definitions on the table at an early practicable time–Rule 23(c)(1)(A)–is not an abuse of discretion, as that's the Rule's own schedule." *Id.* at 785. The Seventh Circuit affirmed the district court's denial of a second class certification motion filed more than four years into the litigation and emphasized that defendants have the right to have class issues resolved at early, practicable times–not after extensive and costly class-wide discovery. Plaintiff nevertheless asks for sweeping, nationwide discovery concerning undefined "putative class members" before the Court has resolved threshold issues bearing on identity of class members, viability, scope, or manageability of any class.

Under these circumstances, requiring Prime Time to undertake the massive exercise Plaintiff demands–before the Court determines whether Plaintiff has stated a viable claim or can propose a workable class – is inconsistent with Rule 23's timing directive and with the Court's obligation to manage discovery efficiently.

<u>Plaintiff Has Not Shown a Basis to Deem Prime Time's Objections Waived</u>

Plaintiff argues that the Court should deem Prime Time's objections waived because its written responses to the Second Set of Requests were served after the initial 30-day deadline. Waiver of objections, however, is not automatic; Rule 33(b)(4) expressly provides that any untimely objection may be excused for "good cause," and courts in this District have repeatedly declined to impose

3

blanket waiver where the responding party substantially participated in discovery and any delay caused no material prejudice.

Here, the record shows that Prime Time has engaged in ongoing, good-faith efforts to respond to discovery. Prime Time acknowledged responsive documents in August 2025 and then supplemented its production over several months, completing that process in December 2025. When Plaintiff noted that responses to the Second Set had not yet been served, Prime Time requested and obtained additional time—until December 12, 2025—to respond, and then served written responses and objections on that date. Prime Time served further supplemental responses on December 18, 2025, and participated in multiple meet-and-confer communications, including a January 5, 2026 call under Local Rule 37.2. In light of this record, any delay was modest, was addressed through extensions, and did not prevent Plaintiff from understanding or challenging Prime Time's position on class-wide call data.

Moreover, Plaintiff identifies no concrete prejudice from the timing of Prime Time's responses. She has had the objections at issue since December 2025; she has received Plaintiff-specific call data, policies, and vendor information; and she was able to file the present Motion to Compel and brief her arguments without impediment. Under these circumstances, the Court should exercise its discretion to excuse any technical untimeliness and reach the merits of Prime Time's proportionality, burden, and overbreadth objections.

**II.     The Requested Discovery Is Disproportionate to the Needs of the Case Under Fed. R. Civ. P. 26(b)(1).**

Even if some pre-certification discovery were appropriate, Plaintiff's requests far exceed what Rule 26(b)(1) allows. Discovery must be "proportional to the needs of the case," considering, among other things, the amount in controversy, the parties' relative access to information, and whether "the burden or expense of the proposed discovery outweighs its likely benefit." In *Gebka* v. *Allstate Corp.*,

4

2021 WL 1062779 (N.D. Ill. Mar. 4 2021), the court recognized that "the scope of discovery must be sufficiently broad to give the plaintiff a realistic opportunity to meet the requirements of class certification." *Id.* at 6. However, the court carefully limited the discovery it would permit, denying plaintiff's request for additional discovery from third parties and emphasizing proportionality concerns. *Id.* at 7-8 (denying plaintiff's request to expand discovery to 84 additional Allstate agencies where plaintiff had not met local Rule 37.2 meet-and-confer requirements and where the expansion would be disproportionate to the needs of the case).

Even assuming some pre-certification discovery is appropriate, Plaintiff's Second Set request for "all call detail records" and "all prerecorded messages" for "all outbound calls" to "any putative class member" over a four-year period far exceeds what Rule 26(b)(1) permits. Discovery must be proportional to the needs of the case, considering the amount in controversy, the parties' relative access to information, their resources, the importance of the discovery to the issues, and whether the burden or expense outweighs the likely benefit.

Prime Time is a small, local, window-cleaning business, not a national telemarketer with a dedicated litigation team and in-house data science department. Its outbound calling activity over four years encompasses a mix of service calls, scheduling calls, and limited marketing contacts, all recorded in ordinary business systems that were not designed for litigation data extraction. As explained in the accompanying declaration of William Dron, Prime Time's President, four years of outbound records include approximately 150,000 calls across different systems or vendors, each of which would have to be separately queried, exported, normalized, and reviewed for responsiveness, privilege, and confidentiality. That process would require an estimated 20-40 hours of vendor work and a similar number of hours of attorney/paralegal review, at an out-of-pocket cost estimated at approximately $20,000 in attorney's fees alone, exclusive of third-party costs and the cost of internal disruption to Prime Time's operations.

5

Plaintiff, by contrast, has not yet substantiated even the basic factual predicates of her own individual claims. As set out in Prime Time's January 23, 2026 Rule 11 letter, Plaintiff's own carrier records do not show calls from the number she pleads, she has not produced any audio recording of the alleged prerecorded voicemail(s), and Prime Time's records show that she was in fact a prior customer. Plaintiff likewise has produced no competent evidence supporting her numerosity allegations; those allegations rest largely on anonymous internet posts and a bare assertion that "at least 50" individuals exist, coupled with unexplained references to "robotexts" that no produced document ties to Prime Time.

Plaintiff cannot use discovery to search for a class where the class definition is amorphous or speculative. *Chapman*, 796 F.3s 785. Plaintiff's class allegations rest on the bare assertion of "at least 50" individuals allegedly receiving calls, based in part on anonymous internet posts and a single allegation of "robotexts," with no evidence that Defendant ever used text messaging at all. Permitting Plaintiff to obtain the complete universe of four years of call data before she has a viable, administratively feasible class definition (and before she has substantiated her own calls) essentially inverts Rule 23(c)(1)(A). Requiring Prime Time to incur the substantial expense of assembling four years of class-wide call data - before Plaintiff has proven even that she herself received a single actionable call - is not proportional to the needs of the case.

Plaintiff cites cases in which courts compelled production of call or fax logs in large TCPA class actions, including *Ossola* v. *Am. Express Co.,* No. 13 C 4836, 2015 WL 5158712, at *7 (N.D. Ill. Sept. 3, 2015), and *Whiteamire Clinic, P.A.* v. *Quill Corp.*, No. 12 C 5490, 2013 WL 5348377, at *3 (N.D. Ill. Sept. 24, 2013). Those decisions involved sophisticated corporate defendants whose business models centered on mass marketing and who refused to provide any meaningful class discovery while contesting certification. Here, Prime Time has already produced Plaintiff-specific call records, policies and procedures, internal do-not-call practices, and vendor contracts, and stands ready to provide

6

additional targeted information tied to Plaintiff's own allegations. Moreover, the out-of-circuit authorities Plaintiff cites turned in significant part on the defendant's failure to substantiate its burden objections; courts in those cases noted the absence of affidavits or concrete cost estimates and overruled "generalized assertions" of burden. Prime Time, by contrast, has now provided specific evidence of the volume of data involved and the cost and disruption of extracting and reviewing it.

The Northern District of Illinois has emphasized that, although class plaintiffs must receive a "realistic opportunity" to meet Rule 23, discovery must still be cabined by proportionality. In *Gebka* v. *Allstate Corp.*, for example, the court declined to expand discovery to dozens of additional agencies where doing so would be disproportionate and where the plaintiff had not demonstrated why such expansion was necessary to resolve class issues. The same principle applies here. Plaintiff can test her theories and Rule 23 requirements through more tailored means—complete records for her own number, the policies and procedures already produced, and appropriately limited, representative call data—without imposing on a small business the extraordinary burden of compiling the entire universe of four years of outbound calling records across all customers, campaigns, and vendors. Because the burden and expense of Plaintiff's request plainly outweigh its likely incremental benefit, the Court should deny the Motion as to the full four-year, all-calls request and, at most, order a narrower, staged production as outlined below.

### III. Plaintiff's Requests are Vague and Overbroad.

Plaintiff's requests are not just expansive; they are also fundamentally unclear. They seek all data for calls to "any putative class member" but do not define that term in operational, objective terms that Prime Time can apply to its systems. Whether a person is a "putative class member" is precisely the merits and question Plaintiff asks the Court to decide, yet she uses that circular label as the limiting principle for her discovery demands. The requests likewise refer broadly to "all prerecorded messages" and "all call data" without specifying what fields, media, or systems are at

7

issues, or whether Plaintiff seeks scripts, audio files, voicemail content, or other categories of materials. Federal discovery rules require reasonable particularity, and courts routinely deny or narrow discovery that is framed in such open-ended, indeterminate terms. See *Dorfman v. Albertsons, LLC,* No. 118-cv-00094-DCN, 2020 WL 86192 at 4 (D. Idaho Jan. 7, 2020) (denying class certification where the plaintiff could not show that discovery measures were likely to produce persuasive information substantiating class action allegations. The court also noted that plaintiff's failure to propose any concrete methodology for using discovery to resolve class-wide issues justified denial of discovery and class certification.) Prime Time has already produced or agreed to produce Plaintiff-specific call records and relevant policies and procedures, and stands ready to respond to properly framed, targeted requests. The Motion should not be used to rewrite Plaintiff's vague discovery into something new.

Plaintiff's evidentiary gaps undermine the need for broad class discovery at this stage. Rule 26(b)(1) directs courts to consider not only the potential relevance of requested information but also whether discovery "is important to resolving the issues." Here, Plaintiff has not yet carried her threshold burden to substantiate her individual claims, which strongly counsels against ordering sweeping class-wide discovery at this time.

As detailed in Prime Time's Rule 11 correspondence, Plaintiff has failed to produce evidence supporting several core factual allegations in her First Amended Complaint. She alleged "five or more" telephone solicitations, yet her own telephone records do not identify any calls from the number she pleads, nor has she otherwise matched specific calls to Prime Time. She alleged that she had no prior relationship with Prime Time, but Prime Time's records reflect two separate service invoices for work performed at her property, directly controverting that assertion. She alleged prerecorded telemarketing voicemails, yet has not produced any audio recordings and relies instead on a single screen-shot image that cannot be tied to a specific phone number, date, or Prime Time's systems. Her class allegations similarly rest on anonymous online comments and an unsupported claim that "at least 50" other

8

individuals received unlawful calls or "robotexts," despite the absence of any evidence that Prime Time has ever used text messaging for marketing.

Under these circumstances, the most efficient and fair way to manage discovery is to sequence it. Prime Time respectfully submits that Plaintiff should first be required to: (1) identify, through admissible records or sworn testimony, at least one specific call that allegedly violated the TCPA, including the date, time, calling number, and content; (2) produce any voicemail audio she contends is prerecorded; and (3) refine her class definitions to reflect the actual calling technology and communication channels at issue. Once Plaintiff has established that she has a viable individual claim and a coherent, administratively feasible class theory, the Court can evaluate what additional class-related discovery, if any, is warranted.

This approach is consistent with the Seventh Circuit's instruction in *Chapman* v. *First Index* that plaintiffs must "put their class definitions on the table at an early practicable time," rather than engage in "open-ended discovery in search of a certifiable class." Allowing Plaintiff to obtain four years of complete outbound call data before she has substantiated even one actionable call risks turning discovery into a fishing expedition, in which class-wide records are used to manufacture a theory that the current pleadings, and Plaintiff's own evidence, do not support. The Court should instead exercise its discretion under Rules 16 and 26 to sequence and limit discovery so that Plaintiff's individual claims and class theory are tested first, before imposing the heavy burdens of the class-wide production she seeks.

In the alternative, if the Court is inclined to allow some broader discovery now, Prime Time requests that any such order be carefully tailored and staged. For example, the Court could limit initial production to: (a) full call records and prerecorded message content relating to Plaintiff's number for a defined period around the alleged calls; and (b) aggregated statistics regarding the number of unique telephone numbers contacted in specific telemarketing campaigns during a shorter time window.

9

Depending on what those more targeted disclosures show, the Court can then determine whether further, more burdensome production is necessary or proportional.

### IV. Plaintiff Seeks Class-Member Identity Information That Is Not Ordinarily Discoverable Pre-Certification.

Finally, Plaintiff's motion should be denied to the extent it seeks to compel Prime Time to identify and disclose the names, numbers, and contact information of all persons who might fall within Plaintiff's proposed classes. The Supreme Court has held that the names and addresses of potential class members "do not fall within the scope of allowable discovery under Rule 26(b)(1)" and that it is "usually inappropriate for a court to order a defendant to help a plaintiff identify class members" in this way. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-53 (1978). Courts applying this rule in putative class actions–including within the Seventh Circuit–have accordingly refused to compel wholesale production of class-member identity information, permitting at most limited sampling or aggregated data where necessary to address Rule 23 numerosity or similar issue. See, e.g., *Swelnis v. Universal Fidelity L.P.,* No. 2:13-cv-104-PRC, 2014 WL 1598849, at *2 (N.D. Ind. Apr. 17, 2024).

Plaintiff's motion goes much further, effectively seeking a complete list of individuals her counsel can contact in connection with this lawsuit. That is exactly the type of pre-certification client-identification discovery that *Oppenheimer* and its progeny disfavor. To the extent any information about the scope of Prime Time's calling campaigns is needed at this stage, it can be provided in the form of statistics or representative samples, without compelling disclosure of individual class member identities.

### CONCLUSION

For these reasons, Prime Time respectfully requests that the Court deny Plaintiff's Motion to Compel. In the alternative, Prime Time requests that the Court limit any pre-certification discovery to narrowly tailored, proportional requests directed to Plaintiff's individual claims and to aggregated or representative information necessary to permit an informed Rule 23 determination, without requiring

10

Prime Time to identify or produce individualized data for all "putative class members." Prime Time also respectfully requests an expedited ruling on Defendant's pending Motion to Dismiss as well as such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: February 5, 2026 | Respectfully Submitted, |// 

Signature: /David M. Adler/
David M. Adler, Esq.
Illinois Bar No. (6242403)
Adler Law Group
320 West Ohio Street, Ste. 3W
Chicago, IL 60654
Phone: (866) 734-2568
Email: David@adler-law.com
*Attorneys for Defendant*

11