**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BARBARA BULGART** | **)** | |
| | **)** | |
| Plaintiff, | **)** | |
| | **)** | Case No. 1:24-cv-13306 |
| v. | **)** | |
| | **)** | Hon. Jeremy C. Daniel |
| **PRIME TIME WINDOW CLEANING, INC.,** | **)** | |
| | **)** | Magistrate Judge Maria Valdez |
| Defendant. | **)** | |
| | **)** | |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL

Defendant's opposition confirms why this Motion must be granted. Prime Time does not deny that it placed telemarketing calls, that it used prerecorded or artificial voice messages, or that it possesses comprehensive dialing and campaign data reflecting the scope of that conduct. Instead, Defendant advances a strategy repeatedly rejected by courts in TCPA class actions: it seeks to contest class certification while simultaneously withholding the very discovery necessary to prove numerosity, commonality, predominance, and damages. The Federal Rules do not permit that maneuver.

Defendant's response rests on three flawed premises. First, Defendant argues that class-wide discovery is "premature" until Plaintiff independently proves class facts using evidence that exists exclusively in Defendant's systems. That is backwards. Discovery is the mechanism by which plaintiffs obtain evidence uniquely held by defendants, particularly in TCPA cases where dialing records are the best—and often only—reliable proof of calling practices.

Second, Defendant attempts to transform proportionality into an immunity doctrine for small businesses, contending that because it is not a "national telemarketer," it should not be

1

required to produce ordinary business records reflecting its outbound calling campaigns. Rule 26 contains no such carveout. TCPA liability does not turn on corporate size, and courts routinely compel production of dialing data from entities far smaller than the defendant here

Third, Defendant relies heavily on alleged evidentiary gaps in Plaintiff's proof (they are wrong, as discussed below) while refusing to produce its own dialing and campaign records that would conclusively resolve those issues. Defendant cannot withhold discovery and then cite the absence of that discovery as a reason to deny the Motion.

When the arguments are stripped down to their essentials, this case is straightforward: Plaintiff seeks standard TCPA class discovery—outbound call logs and prerecorded message data—that courts routinely compel because it is central to Rule 23 and damages. Defendant has superior access to that information, has already admitted it exists, and has not met its burden to show that production would be unduly burdensome or disproportionate. The Motion should be granted.

## I.    DEFENDANT CANNOT CONTEST CLASS CERTIFICATION WHILE WITHHOLDING DISCOVERY CENTRAL TO RULE 23

Defendant's primary contention is that class-wide discovery is "premature" because Plaintiff has not yet proven a viable class or substantiated her individual claims to Defendant's satisfaction. Courts in this District and across the country have squarely rejected that argument.

As Judge Schenkier explained in *Whiteamire Clinic, P.A. v. Quill Corp.,* "[t]he Court cannot permit [a defendant] on one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified." 2013 WL 5348377, at *3 (N.D. Ill. Sept. 24, 2013). That principle has been applied repeatedly in TCPA cases to compel production

of outbound call lists, dial logs, and campaign data. *See Ossola v. Am. Express Co.,* 2015 WL
5158712, at *7 (N.D. Ill. Sept. 3, 2015) ("Call data is relevant, and thus produced as standard
practice.").

Defendant attempts to distinguish those cases by arguing that Plaintiff's class definition is
"amorphous" or "speculative." But that is precisely why the data must be produced. Dialing records
are how courts and parties determine whether a proposed class is ascertainable, whether calls were
made using common technology, and whether numerosity exists. Limiting discovery to Plaintiff's
own calls would make Rule 23 impossible in TCPA cases – that's why it's not the law.

Defendant relies heavily on *Chapman v. First Index, Inc.,* 796 F.3d 783 (7th Cir. 2015), to
argue that Plaintiff must first "put her class definition on the table" before obtaining class-wide
discovery. That reliance is misplaced. A careful reading of Chapman confirms that it has no
application to the ordinary pre-certification discovery sought here and, in fact, illustrates why
Defendant's position is wrong.

Chapman was not a discovery dispute. It was a late-stage class-certification appeal arising
more than four years after the case was filed, after discovery had closed, experts had reported, and
the district court had already adjudicated class certification issues on one theory. The Seventh Circuit
affirmed the district court's refusal to allow the plaintiff to radically re-engineer the case at the
eleventh hour by proposing an entirely new class definition based on opt-out notice defects—an issue
the plaintiff had known about from the outset but had made a strategic decision not to pursue.

The court's concern in Chapman was gamesmanship and delay, not access to discovery.
Judge Easterbrook emphasized that the plaintiff sought a "fallback position" only after his original
class theory failed, attempting to change the focus of the litigation "almost five years into the case"
after the parties and the court had already expended substantial resources litigating a different class

theory. The decision rested on the district court's discretion to manage its docket and to prevent a plaintiff from remaking a lawsuit years after it began. *Id.* at 786.

Nothing like that is occurring here. This case is in its ordinary discovery phase. Plaintiff is not proposing a new or belated class theory, abandoning a failed strategy, or attempting to restart the litigation after years of delay. To the contrary, Plaintiff has consistently alleged a uniform telemarketing campaign involving prerecorded or artificial-voice messages and seeks the very dialing and campaign records that will confirm the scope of that conduct. *Chapman* does not stand for the proposition that a plaintiff must prove numerosity, commonality, or class membership without access to the defendant's records. Here, Defendant has not moved to stay discovery, bifurcate discovery, or limit discovery by court order. There is a single discovery period. Plaintiff is therefore entitled to discovery relevant to both her individual claims and her class claims now, not at some undefined later stage after Defendant has had the benefit of one-sided discovery.

The Defendant has not provided a sufficient basis of burden to not comply with discovery. First, Defendant's records appear to be maintained electronically, making export of them either. Courts have recognized that such production is not unduly burdensome where the data can be readily retrieved. *See Medina v. Enhanced Recovery Co.*, 2017 U.S. Dist. LEXIS 186651, at *14 (S.D. Fla. Nov. 9, 2017) (burden mitigated because data could be produced via CSV or spreadsheet).

Even if Defendant had made a burden showing, Plaintiff's need for this information would outweigh it. As the Advisory Committee Notes to the 2015 amendment to Rule 26 recognize, in cases of "information asymmetry" one party often has little discoverable information while the other has vast amounts of easily retrievable data. In such circumstances, "the burden of responding to discovery lies heavier on the party who has more information, and properly so." Fed. R. Civ. P.

26(b)(1) advisory committee's note. This case fits that mold precisely: Plaintiff cannot prove the class allegations without the very records Defendant is withholding.

Indeed, courts in other TCPA cases have rejected nearly identical burden arguments. In *Perrong v. Victory Phones, LLC*, No. 20-cv-5317, ECF No. 68 (E.D. Pa. Apr. 5, 2022), the defendant submitted an affidavit claiming that producing call records would cost $43,000. The court nonetheless compelled production, finding the call records were relevant, proportional, and necessary for class certification. The same is true here.

Nor is Defendant's status as a "small, local business" a basis to deny discovery. TCPA compliance is not optional for small businesses, and ordinary dialing platforms and vendors maintain call logs as a matter of course. Defendant does not contend that the data does not exist or that it must be manually recreated from scratch. At most, Defendant complains that production will require vendor queries and attorney review—costs that accompany virtually every TCPA class action.

## II. DEFENDANT'S OPPOSITION RESTS ON A FALSE PREMISE

Defendant's opposition is built on a false premise: that Plaintiff must independently prove facts that lie exclusively within Defendant's control before discovery may proceed. The Federal Rules impose no such requirement. To the contrary, discovery exists precisely to permit a plaintiff to obtain evidence uniquely held by the defendant.

Plaintiff has more than substantiated her individual claims. She has produced carrier records, voicemail transcripts and recordings, contemporaneous complaints, screenshots, and third-party corroboration, all of which support her allegations of repeated telemarketing conduct. Defendant's refusal to produce its own dialing-system and campaign data cannot be used to defeat

discovery into that very conduct.

**A. Defendant's Arguments Concerning the Absence of Voicemail Evidence Are Moot**

A central premise of Defendant's opposition is that Plaintiff "has not produced any audio recordings of the alleged prerecorded voicemail(s)" and instead relies only on a screenshot untethered to Defendant's systems. Def. Opp., ECF No. 38, at 6. That assertion is no longer accurate. On February 6, 2026, Plaintiff produced four voicemail recordings left on her phone promoting Defendant's services, and on February 9, 2026, Plaintiff produced a fifth voicemail recording, also originating from Defendant. **Exhibit 1**, February 6 and 9 Email Production. These recordings span multiple dates—from September 2022 through October 2024—and correspond to the conduct alleged in the Complaint. They are further corroborated by previously produced screenshots reflecting voicemail transcripts from calls placed from 630-504-7763 on September 26, 2024, and again on October 11, 2024, confirming repeated telemarketing voicemails over an extended period.

The existence of these recordings directly undercuts Defendant's claim that Plaintiff has failed to substantiate her allegations or identify even a single actionable call. Plaintiff has now done precisely what Defendant argued was missing: she has produced actual voicemail audio evidencing repeated telemarketing calls. Defendant cannot avoid this evidence by pointing to purported gaps in Plaintiff's carrier records, as voicemail recordings constitute independent proof that calls were placed and messages delivered. At minimum, this evidence establishes genuine factual disputes concerning Defendant's calling practices, the technology used, and the scope of its outbound campaigns—disputes that foreclose Defendant's attempt to sequence or deny discovery and demonstrate why access to Defendant's dialing data and prerecorded-message systems is necessary and proportional.

**B. Defendant's Improper Reliance on Rule 11 to Obstruct Discovery**

Defendant's reliance on its January 23, 2026 Rule 11 letter is improper and should be disregarded. Rule 11 is not a discovery tool and may not be invoked to resist a motion to compel or to intimidate a party seeking discovery into facts uniquely within the opposing party's control. Rule 11 "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." Fed. R. Civ. P. 11(d); *Michiana Dairy Processors, LLC v. All Star Bev., Inc.*, No. 2:09-CV-39-PRC, 2011 U.S. Dist. LEXIS 35162, at *34 (N.D. Ind. Mar. 31, 2011).

Courts have repeatedly emphasized that Rule 11 "should not be employed as a discovery device or to test the legal sufficiency or efficacy of the allegations in the pleadings." *Harter v. Iowa Grain Co.*, 202 F.3d 273 (7th Cir. 1998) (quoting Advisory Committee Notes (1993)); *Huskey v. State Farm Fire & Cas. Co.*, No. 22 C 7014, 2025 U.S. Dist. LEXIS 256859, at *9 (N.D. Ill. Dec. 11, 2025). Yet that is precisely how Defendant attempts to deploy Rule 11 here.

As a threshold matter, Rule 11 does not govern discovery conduct. By its express terms, it applies only to "pleadings, written motions, and other papers" submitted to the Court—not to discovery requests or motions to compel. Fed. R. Civ. P. 11(d). Discovery conduct is governed by Rules 26 through 37. Defendant's effort to inject Rule 11 into a discovery dispute is therefore legally misplaced and contrary to the Federal Rules.

Defendant's Rule 11 letter is also procedurally deficient. It was not accompanied by a proposed motion identifying the specific conduct allegedly violating Rule 11, as required by Rule 11(c)(2), nor was it served for its intended purpose—to provide a safe harbor allowing withdrawal or correction of a challenged filing. Instead, Defendant repurposed the letter as a litigation tactic, attaching it to its discovery opposition to lend unwarranted gravity to routine discovery and merits disputes.

Substantively, Defendant's Rule 11 accusations merely repackage its disagreement with Plaintiff's discovery requests and its views on the ultimate merits. Defendant does not allege that Plaintiff fabricated evidence or asserted claims without a factual basis. To the contrary, Plaintiff has produced sworn interrogatory responses, carrier records, voicemail transcripts and recordings, screenshots, contemporaneous complaints, and third-party corroboration. Defendant's assertion that this evidence is insufficient—particularly while it refuses to produce its own dialing and call-system data—does not transform Plaintiff's claims into sanctionable conduct.

Most tellingly, Defendant does not contend that the challenged calls did not occur. Instead, it faults Plaintiff for purported gaps in proof while withholding the very information that would conclusively establish those facts. Rule 11 cannot be used to penalize a party for seeking discovery into evidence exclusively within an opponent's possession, nor to shield a party from producing that evidence.

Courts routinely reject attempts to weaponize Rule 11 in this manner. *Am. Family Mut. Ins. Co. v. Electrolux Home Prods.*, No. 20-CV-1455, 2023 U.S. Dist. LEXIS 187829, at *9 (E.D. Wis. Oct. 19, 2023). The Court should do the same here and resolve Plaintiff's motion under the proper standards of Rules 26 and 37—not through improper sanction threats

**C. Defendant's Rule 11 Narrative Is Flatly Contradicted by the Discovery Record**

Defendant's assertion that Plaintiff has not "substantiated even the basic factual predicates" of her claims is demonstrably false. Def. Opp. at 6. Plaintiff has produced carrier records, detailed sworn interrogatory responses, voicemail transcripts and recordings, contemporaneous complaints, screenshots, and third-party corroboration, all of which support both her individual TCPA claims and the existence of widespread, repeated telemarketing conduct.

What Defendant seeks is not to expose any genuine absence of evidence, but to deny

Plaintiff access to the evidence necessary to prove her claims—evidence that resides exclusively in Defendant's possession. Defendant does not contend that the calls did not occur; instead, it argues that Plaintiff cannot "show" them while simultaneously refusing to produce the dialing-system and campaign data that would conclusively establish those facts.

That strategy is particularly transparent here. As Defendant knows, ringless voicemail calls do not appear on a recipient's carrier call logs, making Defendant's own dialing and campaign records the only reliable source of confirmation. The FCC has expressly recognized that ringless voicemail messages may not cause a phone to ring and may bypass traditional call indicators, yet still constitute "calls" under the TCPA. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Declaratory Ruling and Order, 37 FCC Rcd 13675, para 3 (noting that a "ringless voicemail message" mat not "appear[] as a received call on a bill"). Defendant thus attempts to manufacture an evidentiary gap by withholding the very proof it controls.

Plaintiff has nonetheless produced substantial corroborating evidence, including screenshots reflecting repeated calls, a contemporaneous Better Business Bureau complaint identifying Prime Time by name, and confirmation that dialing the originating number connects directly to Defendant. Defendant does not contend that these calls were spoofed or attributable to a third party.

Defendant cannot simultaneously withhold its own call-system evidence and then argue that Plaintiff's claims fail for lack of proof.

### D. Prior Customer Status Does Not Excuse Post-Revocation Telemarketing

Defendant's reliance on billing statements and prior customer status is misplaced. Defendant did not attach the billing statements to its opposition; for the Court's convenience,

Plaintiff submits them as **Exhibit 2**. Those invoices purportedly date back to 2009–2010 and 2014, yet Defendant offers no declaration or other competent evidence authenticating them, explaining their provenance, or establishing that they reflect an ongoing customer relationship. In any event, Plaintiff made numerous do-not-call requests for years after those dates. Prior customer status does not immunize post-revocation telemarketing, and Defendant's argument deliberately sidesteps revocation altogether. Plaintiff does not dispute that she was once a customer.

Consent under the TCPA is revocable "at any time and through any reasonable means." *Tillman v. Hertz Corp.*, No. 16 C 4242, 2018 U.S. Dist. LEXIS 147945, at *3 (N.D. Ill. Aug. 29, 2018) (quoting *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7989–90 (2015)). The real issue, therefore, is Defendant's continued telemarketing after consent was revoked—conduct Defendant itself has acknowledged.

Ultimately, the problem here is not any lack of evidence by Plaintiff, but Defendant's control over the missing evidence. Every purported "gap" identified by Defendant concerns information solely within Defendant's possession, including dialing-system configuration, prerecorded or artificial-voice indicators, do-not-call flags, and campaign-level call data. Plaintiff has produced all responsive materials in her possession and provided extensive corroboration. Defendant cannot weaponize its refusal to produce discovery as a merits argument against Plaintiff's claims.

Dated: February 9, 2026

Respectfully submitted,

*/s/ Anthony I. Paronich*
Anthony I. Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com

*/s/ Cassandra P. Miller*
Cassandra P. Miller
Samuel J. Strauss
Andrew G. Gunem*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel: (872) 263-1100
cmiller@straussborrelli.com
sam@straussborrelli.com
agunem@straussborrelli.com

*Attorneys for Plaintiff*
*and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Anthony I. Paronich, hereby certify that on February 9, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 9th day of February, 2026.

Respectfully submitted,

*/s/ Anthony I. Paronich*
Anthony I. Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com